UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

----------------------------------------------------------------X

TROY MOXLEY and THOMAS SPIEGEL,　　　:
Individually and on Behalf of All　　　　　　:
Other Persons Similarly Situated,　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　Civil Action No.
　　　　　　　　　　　　　　Plaintiffs,　　:　　8:21-cv-01760
　　　　　　　　　　　　　　　　　　　:
　　　　　-against-　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
OS RESTAURANT SERVICES, LLC and　　　　:
BLOOMIN' BRANDS, INC., together　　　　　:
doing business as BONEFISH GRILL　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Defendants.　　:
----------------------------------------------------------------X

## PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY AN FLSA COLLECTIVE ACTION AND AUTHORIZE NOTICE

Named Plaintiffs Troy Moxley and Thomas Spiegel, along with 11 additional opt-in Plaintiffs (collectively "Plaintiffs")[1], file their request for an Order conditionally certifying a collective of, and permitting Court-supervised notice to, all similarly situated exempt-classified Assistant Managers ("AMs") who worked for Defendants OS Restaurant Services, LLC and Bloomin' Brands, Inc., doing business as Bonefish Gill (collectively "Bonefish" or "Defendants"), at any location in the United States during any part of the period between July 20, 2018, through to the date of the Court's Order on this Motion (the "FLSA Collective"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and state:

---

[1] In addition to the Named Plaintiffs, 11 former and current Bonefish AMs have joined this action (*see* D.E. 2, 9, 12, and 16). All 13 individuals submit Declarations in support of this Motion.

## I.  INTRODUCTION

Together, Defendants own and operate over 1,000 restaurants across the United States under the brands Bonefish Grill, Outback Steakhouse, Carrabba's Italian Grill, Aussie Grill, and Fleming's Prime Steakhouse & Wine Bar.[2] As of December 27, 2020, 180 of those restaurants were Bonefish Grill locations across 31 states.[3] Bonefish Grill restaurants are managed by a Managing Partner. Bonefish also employs salaried Kitchen Managers (also called Culinary Managers) and Front-of-House Managers (also called FOH or Hospitality Managers) at its Bonefish Grill locations. Kitchen Managers and Front-of-House Managers, however variously titled, are referred to collectively herein as Assistant Managers ("AMs").

Named Plaintiffs and the 11 Opt In declarants worked for Defendants as AMs at a total of over 30 Bonefish Grill locations in 12 different states.[4] Defendants classify AMs as exempt from the FLSA's overtime requirements.[5] Notwithstanding the fact

---

[2] Bloomin' Brands 2020 10-K filing, dated Feb. 21, 2021, at 8 (available at https://investors.bloomin brands.com/static-files/d23c92c3-f0d2-4e94-8bc3-f9d451870739); https://www.bloominbrands .com/our-brands, last visited August 23, 2021.

[3] *Id.*; https://locations.bonefishgrill.com/, last visited August 23, 2021.

[4] Moxley Decl. (Ex. A) at ¶ 2; Spiegel Decl. (Ex. B) at ¶¶ 2-3; Ammons Decl. (Ex. C) at ¶¶ 2-3 (Huntsville, Matthews, and Pineville, NC); Anderson Decl. (Ex. D) at ¶¶ 2-3 (Fayetteville, NY; Pittsburgh, PA); Buddenhagen Decl. (Ex. E) at ¶ 2 (Ocala, Gainesville, and Tallahassee, FL); Cloukey Decl. (Ex. F) at ¶ 2 (Camp Hill and Lancaster, PA; Wilmington, DE); Everhart Decl. (Ex. G) at ¶ 2 (Surfside, Columbia, Myrtle Beach, SC; Wilmington, NC; Augusta, GA; Knoxville, TN); Gursky Decl. (Ex. H) at ¶¶ 2-4 (Tallahassee, Panama City, Panama City Beach, and Destin, FL; Columbia, SC; Mobile, AL); LoBrutto Decl. (Ex. I) at ¶ 2 (Vero Beach, Boynton Beach, and Stuart, FL); Miller Decl. (Ex. J) at ¶ 2 (Panama City Beach, Tallahassee, Destin, Ocala, and The Villages, FL; Dallas, TX (two locations)); Rogers Decl. (Ex. K) at ¶¶ 2-3 (Fayetteville, NC; Myrtle Beach, SC); Ruark Decl. (Ex. L) at ¶ 2 (Evansville and Birmingham, IN; Lexington, KY); Smithey Decl. (Ex. M) at ¶¶ 2-3 (Evansville, IN; Lexington, KY).

[5] Moxley Decl. at ¶ 5; Spiegel Decl. at ¶ 6; Ammons Decl. at ¶ 5; Anderson Decl. at ¶ 5; Buddenhagen Decl. at ¶ 6; Cloukey Decl. at ¶ 5; Everhart Decl. at ¶ 5; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 5; Miller Decl. at ¶ 4; Rogers Decl. at ¶ 6; Ruark Decl. at ¶ 5; Smithey Decl. at ¶ 5.

that AMs primarily performed non-exempt tasks including: customer service, preparing food and drink orders, and cleaning, Defendants did not pay overtime wages for their overtime hours worked. Complaint [D.E. 1, at ¶ 41]; Answer [D.E. 2 at p. 13].[6] Defendants had a common corporate policy not to pay AMs wages for overtime hours worked.[7] During their tenures Plaintiffs also worked with, witnessed, and discussed the AM position with hundreds of other AMs, who also reported performing similar duties, working unpaid overtime, and were subjected to Bonefish's common policies and procedures.[8] Nationwide conditional certification of the FLSA Collective is warranted based on the varied geographic locations where Plaintiffs worked, common AM job duties, Defendant's uniform policy to classify AMs as exempt, the fact that AMs work overtime hours without overtime pay, and Defendant's common control over the terms and conditions of AMs' employment nationwide.

Conditional certification would be in accordance with the overwhelming precedent in the Eleventh Circuit and the Middle District of Florida, as well as elsewhere throughout the Circuit, granting conditional certification of FLSA collective actions where, as here, Plaintiffs have satisfied the "modest factual showing" to meet

---

[6] Moxley Decl. at ¶¶ 5-6; Spiegel Decl. at ¶¶ 6-7; Ammons Decl. at ¶¶ 5-6; Anderson Decl. at ¶¶ 5-6; Buddenhagen Decl. at ¶¶ 6-7; Cloukey Decl. at ¶¶ 5-6; Everhart Decl. at ¶¶ 5-6; Gursky Decl. at ¶¶ 6-7; LoBrutto Decl. at ¶¶ 5-6; Miller Decl. at ¶¶ 4, 8; Rogers Decl. at ¶¶ 6-7; Ruark Decl. at ¶¶ 5-6; Smithey Decl. at ¶¶ 5-6.

[7] Moxley Decl. at ¶ 5; Spiegel Decl. at ¶ 6; Ammons Decl. at ¶ 5; Anderson Decl. at ¶ 5; Buddenhagen Decl. at ¶ 6; Cloukey Decl. at ¶ 5; Everhart Decl. at ¶ 5; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 5; Miller Decl. at ¶ 4; Rogers Decl. at ¶ 6; Ruark Decl. at ¶ 5; Smithey Decl. at ¶ 5.

[8] Moxley Decl. at ¶¶ 10-11; Spiegel Decl. at ¶ 12; Ammons Decl. at ¶ 11; Anderson Decl. at ¶ 12; Buddenhagen Decl. at ¶ 15; Cloukey Decl. at ¶ 12; Everhart Decl. at ¶ 10; Gursky Decl. at ¶ 12; LoBrutto Decl. at ¶ 10; Miller Decl. at ¶ 15; Rogers Decl. at ¶ 12; Ruark Decl. at ¶ 10; Smithey Decl. at ¶ 11.

their "minimal burden." *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262 (11th Cir. 2008) (affirming collective action trial verdict on behalf of misclassified store managers). Conditional certification is especially warranted in this FLSA misclassification case, where courts routinely grant notice. *Id.*; *Whitaker v. Kablelink Communications, LLC*, No. No. 13 Civ. 2093, 2013 U.S. Dist. LEXIS 157675 (M.D. Fla. Nov. 4, 2013); *see also Goers v. L.A. Entertainment Grp, Inc.*, No. 15 Civ. 412, 2016 U.S. Dist. LEXIS 114092 (M.D. Fla. July 8, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 113813 (M.D. Fla. Aug. 25, 2016); *Lytle v. Lowe's Home Center, Inc.*, No. 12 Civ. 1848, 2014 U.S. Dist. LEXIS 3227 (M.D. Fla. Jan. 10, 2014).

## II.  STATEMENT OF FACTS

### A. Overview of Plaintiffs' Claims and Procedural History

On July 20, 2021, Named Plaintiffs filed this lawsuit alleging violations of the FLSA on behalf of themselves and all other similarly situated AMs. D.E. 1. To date 11 Opt-In Plaintiffs have joined the case. D.E. 2, 9, 12, and 16. Named Plaintiffs and the 11 Opt-In Plaintiffs worked in over 30 Bonefish locations in 12 states: Alabama, Delaware, Florida, Georgia, Indiana, Kentucky, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, and Texas. These AMs allege that in light of Defendant's unlawful policy of misclassifying them as employees exempt from overtime wages, Defendants failed to pay them and other AMs overtime wages they are owed for the hours they worked over 40 in a workweek. D.E. 1. On October 7, 2021, Defendants filed their Answer admitting that they classified Plaintiffs and all of

the other AMs as exempt, and asserted affirmative defenses that Plaintiffs and all of the other AMs are/were exempt. D.E. 17 (Answer and Affirmative Defenses) at p. 22.

Given that this case is in its earliest stages, the Eleventh Circuit's minimal burden applies to Plaintiffs' Motion. *See Morgan*, 551 F.3d at 1262. Plaintiffs satisfy their burden for conditional certification and the Court should allow Plaintiffs to send a Court-supervised notice to other current and former AMs nationwide providing them an opportunity to join this lawsuit. In light of the minimal burden at this stage, the ample evidence demonstrating a common group of similarly situated salaried AMs, the expiring statute of limitations on the salaried AMs' claims, and the FLSA's remedial purpose, Plaintiffs' Motion should be granted.

## B. The Parties

Named Plaintiff Troy Moxley worked for Defendants as an AM from approximately August 2017 to August 2019 at restaurant locations in Hilton Head, South Carolina, and Savannah Georgia. [D.E. 1] at ¶ 8; Moxley Decl. at ¶ 2. Named Plaintiff Thomas Spiegel worked as an AM from approximately April 2017 to September 2019 at a restaurant in Whitehall, Pennsylvania. [D.E. 1] at ¶ 10; Spiegel Decl. at ¶ 2. The 11 Opt In Plaintiffs worked at various other locations.  *See* fn. 4, *supra*. Bloomin' Brands, Inc. is a publicly traded international corporation (Nasdaq BLMN) that, together with OS Restaurant Services, LLC, owns and operates over one thousand restaurants in 31 of the United States, franchises another 166 restaurants domestically, and owns or franchises approximately 300 restaurant locations in 20 other countries. Bloomin' Brands 2020 10-K filing dated Feb. 21, 2021, at 8 (available

at https://investors.bloominbrands.com/static-files/d23c92c3-f0d2-4e94-8bc3-f9d45
1870739); https://locations.bonefishgrill.com/, (Last visited August 23, 2021).

**C. AMs Are Similarly Situated**

      **1. Plaintiffs and Similarly Situated AMs Perform Common Job Duties.**

Salaried AMs primarily perform the same core group of duties at all locations
in which they worked. Plaintiffs, who worked in over 30 different locations in 12 states,
all testify that they primarily spent their days – between 75 % and over 90% of their
time – performing these same manual labor and customer-service oriented tasks:
prepping and portioning food, grilling, cutting fish, making drinks, washing dishes,
cleaning, expoing and delivering food, bussing tables, and greeting and seating
customers.[9] Additionally, Bonefish uses job postings which outline identical duties for
AMs. Ex. N.  In fact, Bonefish Grill uses the same posting for Kitchen Managers,
Front of House Managers, and a position it advertises as "Restaurant Manager" –
noting the position carries both front-of-house and back-of-house duties. *See* Ex. N.

      **2. AMs Are All Denied Overtime Pay Because of Defendants' Common, Unlawful Corporate Policy to Classify All AMs as Exempt**

Bonefish does not pay AMs overtime compensation.[10] Instead, it classifies them
as exempt from overtime with no additional compensation for the hours they work

---

[9] Moxley Decl. at ¶ 6; Spiegel Decl. at ¶ 7; Ammons Decl. at ¶ 6; Anderson Decl. at ¶ 6; Buddenhagen
Decl. at ¶ 7; Cloukey Decl. at ¶ 6; Everhart Decl. at ¶ 6; Gursky Decl. at ¶ 7; LoBrutto Decl. at ¶ 6;
Miller Decl. at ¶ 8; Rogers Decl. at ¶ 7; Ruark Decl. at ¶ 6; Smithey Decl. at ¶ 6.
[10] Moxley Decl. at ¶ 5; Spiegel Decl. at ¶ 6; Ammons Decl. at ¶ 5; Anderson Decl. at ¶ 5; Buddenhagen
Decl. at ¶ 6; Cloukey Decl. at ¶ 5; Everhart Decl. at ¶ 5; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 5;
Miller Decl. at ¶ 4; Rogers Decl. at ¶ 6; Ruark Decl. at ¶ 5; Smithey Decl. at ¶ 5.

over 40 in a work week.[11] Plaintiffs testify that they and other AMs worked many

unpaid overtime hours, regularly between approximately 10 and 20 hours each week.[12]

### 3. Defendants Control AMs' Duties and Defendants' Restaurant Operations Through Common Policies and Procedures

Bonefish issues common corporate policies that dictate how restaurants operate

and how AMs must perform their duties. For example, Bonefish directs how AMs

must perform customer service, prepare food and beverages, clean the restaurant, and

open and close the restaurant – virtually every task is to be completed in compliance

with processes and procedures – the "Bonefish Way" – which AMs are taught during

their training by physically performing the work and by memorizing processes on

which they complete quizzes.[13] *See Morgan*, 551 F.3d at 1264 ("There is nothing unfair

about litigating a single corporate decision in a single collective action, especially

where there is robust evidence that store managers perform uniform, cookie-cutter

tasks mandated by a one-size-fits-all corporate manual.").

## III.  ARGUMENT

### A. The FLSA's Collective Action Mechanism

An FLSA action to recover unpaid wages may be brought "against any

employer (including a public agency) in any Federal or State court of competent

---

[11] *Id.*

[12] Moxley Decl. at ¶ 4; Spiegel Decl. at ¶ 5; Ammons Decl. at ¶ 4; Anderson Decl. at ¶ 4; Buddenhagen Decl. at ¶ 5; Cloukey Decl. at ¶ 4; Everhart Decl. at ¶ 4; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 4; Miller Decl. at ¶ 3; Rogers Decl. at ¶ 5; Ruark Decl. at ¶ 4; Smithey Decl. at ¶ 4.

[13] Moxley Decl. at ¶ 3; Spiegel Decl. at ¶¶ 3-4; Ammons Decl. at ¶ 3; Anderson Decl. at ¶ 3; Buddenhagen Decl. at ¶ 4; Cloukey Decl. at ¶ 3; Everhart Decl. at ¶ 3; Gursky Decl. at ¶ 3; LoBrutto Decl. at ¶ 3; Miller Decl. at ¶¶ 5-6; Rogers Decl. at ¶ 4; Ruark Decl. at ¶ 3; Smithey Decl. at ¶ 3.

jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. S 216(b). "The purpose of these collective actions is 'to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employee.'" *Green v. Grand Villa*, No. 15 Civ. 1973, 2015 U.S. Dist. LEXIS 162328, at *4-5 (M.D. Fla. Dec. 3, 2015) (citing *Prickett v. Dekalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003)).

Under the FLSA, an employee belonging to a similarly situated collective of plaintiffs must opt-in to the collective by filing a written consent with the district court to be bound by the outcome of the case. *Albritton v. Cagles, Inc.*, 508 F. 3d 1012 (11th Cir. 2007). Without signing and filing such express consent, an employee's claim is not included in the outcome of the case. *Albritton*, 508 F. 3d at 1017. Section 16(b) of the FLSA authorizes conditional certification of a collective action with notice to similarly situated employees of their right to have their claims resolved as part of the proceeding. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-71 (1989).

To facilitate notice to similarly situated employees, district courts have authority to compel defendant-employers to provide the names and addresses of potential plaintiffs through the pretrial discovery process. *Id*. This authority includes sending court-authorized notice to potential opt-in plaintiffs regarding the lawsuit and their right to join. *Id*. In establishing these procedures, the Supreme Court recognized the benefits of a collective action:

8

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id.* at 170.

The district court's authority to supervise notice to collective members derives from the broad discretionary power to manage the process of joining multiple parties in an orderly manner. *Id.* at 169-72. Because judicial involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of the district court to begin its involvement early, at the point of the initial notice, rather than at some later time. *Id.* Court-authorization of the notice serves the legitimate goal of avoiding duplicative suits and setting cut-off dates to expedite disposition of the action. *Id.* The Eleventh Circuit follows this notice procedure for collective actions, as do courts throughout the Middle District of Florida. *See, e.g., Dybach v. State of Florida, Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Leo v. Sarasota Cnty. Sch. Bd.*, No. 16 Civ. 3190, 2017 U.S. Dist. LEXIS 16004 (M.D. Fla. Feb. 6, 2017); *Green*, 2015 U.S. Dist. LEXIS 162328.

## B. The Two-Step Approach to Certification of Collective Actions

The Eleventh Circuit has adopted a "two-tiered" approach for addressing FLSA collective actions, which is followed by Courts in the Middle District of Florida. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *see, e.g., Leo*, 2017 U.S. Dist. LEXIS 16004; *Green*, 2015 U.S. Dist. LEXIS 162328; *Whitaker*, 2013 U.S. Dist.

LEXIS 157675; *Espanol v. Avis Budget Car Rental, LLC*, 2011 U.S. Dist. LEXIS 120485 (M.D. Fla. Oct. 18, 2011); *White v. Subcontracting Concepts, Inc.*, 2008 U.S. Dist. LEXIS 96252 (M.D. Fla. Nov. 14, 2008). Under the two-tiered approach, the district court makes an initial determination based solely upon the pleadings and any evidence of whether notice of the action should be given to potential collective action members, without consideration of the merits of the claim.[14] *Hipp,* 252 F.3d at 1218. The key factor is whether the employees are "similarly situated." *Id*. Because the Court has minimal evidence at this stage, this determination is made using a fairly lenient standard, and "typically results" in conditional certification of a collective. *Green*, 2015 U.S. Dist. LEXIS 162328, at *6 (citations omitted).

### 1.  The Plaintiffs' Burden Is Lenient at This Initial Stage.

To satisfy the initial burden regarding notice under Section 216(b), "plaintiff[s] need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F. 3d at 1217; *Thomas v. Waste Pro USA, Inc.*, 360 F. Supp. 3d 1313, 1319-20 (M.D. Fla. 2019) (citations omitted). *Green*, 2015 U.S. Dist. LEXIS 162328, at *6. Workers are similarly situated for the purpose of notice "if their positions are similar, not identical to the positions held by" the named plaintiffs. *Hipp*, 252 F. 3d at 1217 (quotations omitted); *see also Morgan*, 551 F.3d at 1273. The similarly situated requirement of §216(b) is more elastic and less stringent than the

---

[14] The second step, which does not occur until discovery of these joined claims is completed, allows the Court to make a factual determination whether the claims are similarly situated (e.g., the merits of the claims) based upon full discovery. *Hipp*, 252 F.3d at 1218.

requirements of Rule 23 (as to class actions), Rule 30 (as to joinder) and Rule 42 (as to severance). *Grayson v. K-Mart Corp.*, 79 F. 3d 1086, 1095 (11th Cir. 1996).

For purposes of conditional certification, variations in duties will not preclude a finding that employees are similarly situated where there is a uniform collective of employees performing the same primary function. *Leo*, 2017 U.S. Dist. LEXIS 16004, at *7 (citations omitted); *see also Vondriska v. Premier Mortgage Funding, Inc.*, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007). "[F]actual issues showing variations are not dispositive at the stage for conditional certification." *Thomas*, 360 F. Supp. 3d at 1326. Thus, courts should wait until the end of the second stage to consider "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff." *Leo*, 2017 U.S. Dist. LEXIS 16004, at *7 (quoting *Morgan*, 551 F.3d at 1261-62); *Vondriska*, 564 F. Supp.2d at 1335 ("[v]ariations in specific job duties [as well as] job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at [the notice] stage." (citations omitted); *Fiore v. Goodyear Tire & Rubber Co.*, 2011 U.S. Dist. LEXIS 24371, at *7 (M.D. Fla. March 10, 2011) (conditionally certifying collective of service managers alleged to be misclassified where the "basic responsibilities and duties for Service Managers are consistent throughout the 663 stores."). Also, arguments as to the application of exemptions from the FLSA are not properly before the Court at this time, but rather are reserved for consideration after discovery is complete. *Harris v. Performance Transport., LLC*, No. 14 Civ. 2913, 2015 U.S. Dist. LEXIS 33579, *7 (M.D. Fla. Feb. 13, 2015).

Importantly, notwithstanding Plaintiffs' confidence in their allegations that Defendants violated the law, "[t]he focus of the court's inquiry at this stage is not on whether there has been an actual violation of law, but on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." *Allen v. Hartford Fire Ins. Co.*, No.16 Civ. 1603, 2017 U.S. Dist. LEXIS 136504, at *24, n.11 (M.D. Fla. Aug. 25, 2017) (citations omitted). Thus, in evaluating a motion for conditional certification, the Court does not consider whether the plaintiffs are properly classified. *Russell v. Get Motivated Seminars, Inc.*, No. 11 Civ. 2802, 2012 U.S. Dist. LEXIS 190807, at *10 (M.D. Fla. Apr. 23, 2012) (factors relevant to the merits of the classification are "essentially an attack on the merits of Plaintiff's claims and run contrary to . . . the standard governing stage one of conditional certification."). Similarly, any individualized analysis is improper at the conditional certification stage. *Ciani v. Talk of the Town Rests., Inc.*, No. 14 Civ. 2197, 2015 U.S. Dist. LEXIS 5580, *11-12 (M.D. Fla. Jan. 16, 2015); *Lytle*, 2014 U.S. Dist. LEXIS 3227, at *12; *Schumann v. Collier Anesthesia, P.A.*, No. 12 Civ. 347, 2013 U.S. Dist. LEXIS 24127, *7, n. 2 (M.D. Fla. Feb. 21, 2013). Individualized inquiry at this initial stage would require a detailed fact-finding determination on the merits which is improper at this stage of the litigation. *Torres*, 2016 U.S. Dist. LEXIS 139745, at *7 (citations omitted); *see also Schumann*, 2013 U.S. Dist. LEXIS 24127, at *6.

In addition, to grant conditional certification "[f]ull discovery is not necessary because courts at this stage do not resolve factual disputes or make credibility determinations." *Russell*, 2012 U.S. Dist. LEXIS 190807, at *7. For these same

12

reasons, the court will not make credibility determinations at this stage, even if presented with conflicting evidence. *See, Simpkins v. Pulte Home Corp.*, No. 8 Civ. 130, 2008 U.S. Dist. LEXIS 64270, *17 (M.D. Fla. Aug. 21, 2008).

In *Hipp*, the court rejected the defendant's contention that each plaintiff's case was unique and required an individual analysis of his or her working conditions. *Hipp*, 252 F. 3d at 252. The *Hipp* court found that it was sufficient that the plaintiffs all alleged similar, though not identical, treatment. *Id.* Likewise, in *Morgan*, a leading circuit court FLSA decision, the Eleventh Circuit noted:

> . . . [Defendant] ignores the overwhelming evidence showing that the Plaintiffs, as a group, shared a number of factual details with respect to their job duties and day-to-day work. Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits.

*Morgan,* 551 F.3d at 1263. Again, all that is required at this stage is a showing that the Plaintiffs' "positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F. 3d at 1217; *Green*, 2015 U.S. Dist. LEXIS 162328, at *6.

Courts in the Middle District of Florida have relied on the lenient burden under similar circumstances to grant conditional certification in the initial stages of the case. In a case much like the instant case, Judge Moody conditionally certified an FLSA collective of allegedly misclassified shift managers based on sworn statements demonstrating that shift managers spend a majority of their time on non-exempt work. *Espanol*, 2011 U.S. Dist. LEXIS 120485; *see also Whitaker*, 2013 U.S. Dist. LEXIS 157675 (conditionally certifying collective of field supervisors); *White*, 2008 U.S. Dist. LEXIS 96252 (conditionally certifying collective of delivery drivers). Courts have also

13

conditionally certified FLSA collectives based on declarations of 4 opt-in plaintiffs stating they had the same duties and were subject to the same violative policy, *Green*, 2015 U.S. Dist. LEXIS 162328, at *6-7, and based upon three opt-in declarations and pay records. *Isaacs v. One Touch Direct, LLC*, 2015 U.S. Dist. LEXIS 6211 at *4-5 (M.D. Fla. January 20, 2015); *see also Leo*, 2017 U.S. Dist. LEXIS 16004 at *4-5, 7 (granting conditional certification based upon evidence demonstrating plaintiffs "have the same job requirements, perform similar duties, and are subject to the . . . [same] terms and conditions."). Courts throughout the Middle District applying the two-stage approach in misclassification cases found that FLSA plaintiffs met their lenient burden in the first stage and granted conditional certification based upon minimal evidence. *Ward v. Fla. BC Holdings, LLC*, 2018 U.S. Dist. LEXIS 221552 (M.D. Fla. Dec. 20, 2018) (conditionally certifying FLSA collective of Sales Coordinators asserting they were misclassified as exempt); *Lytle*, 2014 U.S. Dist. LEXIS 3227 (conditionally certifying nationwide FLSA collective of Human Resources Managers asserting they were misclassified as exempt); *Palma*, 2013 U.S. Dist. LEXIS 175934, at *8 (conditionally certifying nationwide FLSA collective of Account Services Representatives asserting they were misclassified as exempt based upon 8 declarations); *Abdul-Rasheed v. Kablelink Communications, LLC*, 2013 U.S. Dist. LEXIS 159632 (M.D. Fla. Nov. 7, 2013) (conditionally certifying Florida collective of cable technicians misclassified as independent contractors); *Bobbitt v. Broadband Interactive, Inc.*, 2012 U.S. Dist. LEXIS

71628 (M.D. Fla. May 23, 2012) (conditionally certifying collective of collections/disconnect technicians misclassified as exempt).[15]

### D. Plaintiffs Present Evidence Far Exceeding the Lenient Standard

Here, Plaintiffs surpass their lenient burden of demonstrating that they and the FLSA Collective are similarly situated in their duties, were similarly compensated, and were similarly deprived of overtime pay.

**First**, Defendants classified *all* salaried AMs as exempt from overtime wages, and based upon this classification, it did not pay overtime wages to any salaried AMs.[16]

**Second**, AMs all primarily perform the same set of non-exempt duties regardless of location.[17] Such duties include performing customer service, preparing food and beverages, cleaning the restaurant, and opening and closing the restaurant.[18] *Id*. These duties are substantially similar at over 30 locations in 12 different states.[19] Plaintiff-

---

[15] *See also Goers*, 2016 U.S. Dist. LEXIS 114092, *9-10 (consents of 2 opt-ins and answers to court interrogatories in which they testified that they were required to work mandatory overtime for which they did not receive compensation supported conditional certification); *DeSimone*, 2016 U.S. Dist. LEXIS 88091, at *7-9 (conditionally certified on basis of named plaintiff's declaration stating he regularly worked overtime without pay and that the primary job duties of mechanics are the same regardless of location, and the consents to join of three opt-ins in which they made similar allegations); *Monserrate v. Hartford Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 86610, *11-14 (M.D. Fla. July 1, 2015) (conditionally certified an FLSA collective where plaintiffs filed declarations testifying to their overtime hours and lack of pay, and their similar non-exempt duties, and their similar salaried status).

[16] D.E. 2 at 22; Moxley Decl. at ¶ 5; Spiegel Decl. at ¶ 6; Ammons Decl. at ¶ 5; Anderson Decl. at ¶ 5; Buddenhagen Decl. at ¶ 6; Cloukey Decl. at ¶ 5; Everhart Decl. at ¶ 5; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 5; Miller Decl. at ¶ 4; Rogers Decl. at ¶ 6; Ruark Decl. at ¶ 5; Smithey Decl. at ¶ 5.

[17] Moxley Decl. at ¶ 6; Spiegel Decl. at ¶ 7; Ammons Decl. at ¶ 6; Anderson Decl. at ¶ 6; Buddenhagen Decl. at ¶ 7; Cloukey Decl. at ¶ 6; Everhart Decl. at ¶ 6; Gursky Decl. at ¶ 7; LoBrutto Decl. at ¶ 6; Miller Decl. at ¶ 8; Rogers Decl. at ¶ 7; Ruark Decl. at ¶ 6; Smithey Decl. at ¶ 6.

[18] Moxley Decl. at ¶ 6; Spiegel Decl. at ¶ 7; Ammons Decl. at ¶ 6; Anderson Decl. at ¶ 6; Buddenhagen Decl. at ¶ 7; Cloukey Decl. at ¶ 6; Everhart Decl. at ¶ 6; Gursky Decl. at ¶ 7; LoBrutto Decl. at ¶ 6; Miller Decl. at ¶ 8; Rogers Decl. at ¶ 7; Ruark Decl. at ¶ 6; Smithey Decl. at ¶ 6.

[19] Moxley Decl. at ¶ 2; Spiegel Decl. at ¶¶ 2-3; Ammons Decl. at ¶¶ 2-3; Anderson Decl. at ¶¶ 2-3; Buddenhagen Decl. at ¶ 2; Cloukey Decl. at ¶ 2; Everhart Decl. at ¶ 2; Gursky Decl. at ¶¶ 2-4; LoBrutto Decl. at ¶ 2; Miller Decl. at ¶ 2; Rogers Decl. at ¶¶ 2-3 ; Ruark Decl. at ¶ 2; Smithey Decl. at ¶¶ 2-3.

Declarants also identified other AMs who worked at locations beyond the 30 in which Plaintiffs and Declarants themselves worked, who also performed the same primary duties as Plaintiff-Declarants. [20] The Plaintiff-Declarants' accounts of the experiences of other AMs are based on having worked alongside them, as well as having met and spoken with them regarding their duties, long hours, physical work, insufficient support and budgets, lack of overtime, and lack of autonomy. [21]

**Third**, Bonefish controls how its restaurants operate and how AMs perform their duties through common corporate policies and procedures, ensuring consistency and uniformity throughout Bonefish's restaurants. [22]

**Fourth**, AMs are all similar in their compensation in that they all are salaried and are all subject to the same incentive plans. [23]

**Fifth**, AMs regularly worked overtime hours (that is, over 40 hours in a workweek) in order to perform all of the duties required by Defendants. [24] Likewise, Plaintiffs aver as to their specific knowledge of the regular and consistent overtime hours worked by other additional AMs. [25]

---

[20] Moxley Decl. at ¶¶ 10-11; Spiegel Decl. at ¶ 12; Ammons Decl. at ¶ 11; Anderson Decl. at ¶ 12; Buddenhagen Decl. at ¶ 15; Cloukey Decl. at ¶ 12; Everhart Decl. at ¶ 10; Gursky Decl. at ¶ 12; LoBrutto Decl. at ¶ 10; Miller Decl. at ¶ 15; Rogers Decl. at ¶ 12; Ruark Decl. at ¶ 10; Smithey Decl. at ¶ 11.

[21] *Id.*

[22] Moxley Decl. at ¶ 3; Spiegel Decl. at ¶¶ 3-4; Ammons Decl. at ¶ 3; Anderson Decl. at ¶ 3; Buddenhagen Decl. at ¶ 4; Cloukey Decl. at ¶ 3; Everhart Decl. at ¶ 3; Gursky Decl. at ¶ 3; LoBrutto Decl. at ¶ 3; Miller Decl. at ¶¶ 5-6; Rogers Decl. at ¶ 4; Ruark Decl. at ¶ 3; Smithey Decl. at ¶ 3.

[23] D.E. 2 at 13; Moxley Decl. at ¶ 5; Spiegel Decl. at ¶ 6; Ammons Decl. at ¶ 5; Anderson Decl. at ¶ 5; Buddenhagen Decl. at ¶ 6; Cloukey Decl. at ¶ 5; Everhart Decl. at ¶ 5; Gursky Decl. at ¶ 5; LoBrutto Decl. at ¶ 5; Miller Decl. at ¶ 4; Rogers Decl. at ¶ 6; Ruark Decl. at ¶ 5; Smithey Decl. at ¶ 5.

[24] Moxley Decl. at ¶ 4; Spiegel Decl. at ¶ 5; Ammons Decl. at ¶ 4; Anderson Decl. at ¶ 4; Buddenhagen Decl. at ¶ 5; Cloukey Decl. at ¶ 4; Everhart Decl. at ¶ 4; Gursky Decl. at ¶ 5; LoBrutto

[25] Moxley Decl. at ¶¶ 10-11; Spiegel Decl. at ¶ 12; Ammons Decl. at ¶ 11; Anderson Decl. at ¶ 12;

Even at the very earliest stages of this litigation, the record here consisting of (a) the pleadings; (b) the 13 Consents to Join; and (c) the 13 Declarations, exceeds Plaintiffs' "lenient" burden of demonstrating that the proposed collective is sufficiently similarly situated to justify issuing notice. This evidence demonstrates, far beyond the required modest showing, that similarly situated salaried AMs regularly worked over 40 hours in a workweek to meet the demands of their jobs but were not paid for this overtime due to Defendant's unlawful policy of misclassifying the AM position as exempt notwithstanding the fact AMs primarily performed similar, non-exempt duties. This evidence is **greater** – mostly substantially greater -- than the evidence in the other cases where courts in this District have conditionally certified FLSA claims of employees claiming to be misclassified as exempt. *See* Section III, *supra*.

In addition, to the above, Defendants use the same job posting for the salaried AM position nationwide. Ex. N. Such evidence further supports the finding that AMs are similarly situated. *Russell*, 2015 U.S. Dist. LEXIS 190807, at *9, n. 3; *see also Joseph v. Family Pres. Servs. of Florida, Inc.*, 2011 U.S. Dist. LEXIS 50120, 2011 WL 1790167, *4 (S.D. Fla. May 10, 2011) (job descriptions probative of similarly situated); *Devries v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 15862, at *18 (S.D. Fla. Feb. 7, 2014) (uniformity of job posting supports a similarly situated finding); *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1352 n.10 (S.D. Fla. 2007) (uniform job descriptions

---

Buddenhagen Decl. at ¶ 15; Cloukey Decl. at ¶ 12; Everhart Decl. at ¶ 10; Gursky Decl. at ¶ 12; LoBrutto Decl. at ¶ 10; Miller Decl. at ¶ 15; Rogers Decl. at ¶ 12; Ruark Decl. at ¶ 10; Smithey Decl. at ¶ 11.

relevant to finding that plaintiffs were similarly situated - even under the more rigorous standards for decertification). For these reasons, Plaintiffs have satisfied the similarly situated prong for conditional certification.

### E. Plaintiffs Satisfy the Participation Prong

After finding that AMs are similarly situated, to grant conditional certification the Court also "should satisfy itself that there are other employees . . . who desire to opt-in." *Dybach*, 942 F. 2d at 1567. At the notice stage, a plaintiff need only provide a "reasonable basis" that there are similarly situated employees who desire to opt into the lawsuit. *Morgan*, 551 F.3d at 1260; *see Dybach*, 942 F.2d at 1567. "Evidence of similarly situated employees who desire to opt in may be based on affidavits of other employees, consents to join the lawsuit filed by other employees, or expert evidence on the existence of other similarly situated employees." *Goers*, 2016 U.S. Dist. LEXIS 114092, at *8 (citations omitted); *see also Stuven v. Texas de Brazil (Tampa) Corp.*, 2013 U.S. Dist. LEXIS 22240, *8-9 (M.D. Fla. Feb. 19, 2013) (declarations of "others have been found to be sufficient to demonstrate interest in the lawsuit and to conditionally certify the class.") (citation omitted).

The threshold burden for the participation prong is "not onerous." *Montserrate*, 2015 U.S. Dist. LEXIS 86610, at *7 (citations omitted). There is "no firm line that has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action." *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 15 Civ. 695, 2016 U.S. Dist. LEXIS 88086, at *11 (M.D. Fla. July 7, 2016). In fact, courts in this District repeatedly

have held that the joinder of as few as a single opt-in satisfies the participation prong. *Torres v. Nature Coast Home Care LLC*, No. 16 Civ. 1970, 2016 U.S. Dist. LEXIS 139745, at *6 (M.D. Fla. Oct. 7, 2016) (citations omitted); *Leo*, 2017 U.S. Dist. LEXIS 16004, at *6; *see also Ciani*, 2015 U.S. Dist. LEXIS 558, at *5-6 (two opt-ins sufficient); *Desimoni*, 2016 U.S. Dist. LEXIS 88091, at *12 (same) (citations omitted); *see also Ortiz v. Metters Indus.*, No. 17 Civ. 1879, 2019 U.S. Dist. LEXIS 12793, at *5 (M.D. Fla. Jan. 28, 2019) (2 opt-ins sufficient); *Monserrate*, 2015 U.S. Dist. LEXIS 86610, at *9-10 (3 opt-ins sufficient); *Gonzalez v. TZ Ins., Solutions, LLC*, 2014 U.S. Dist. LEXIS 40188, *6 (M.D. Fla. Mar. 26, 2014), 2014 U.S. Dist. LEXIS 40188 (five opt-ins sufficient). Other courts have found this prong to be satisfied where declarants "referenc[e] specific co-workers . . . [they] believe will take advantage of certification." *Maar, et al. v. Beall's, Inc.*, No. 16 Civ. 14121, D.E. 47 at 6 (S.D. Fla. Nov. 23, 2016) (interest demonstrated where declarations identified others who were subject to the same classification policy, performed similar duties, and would possibly participate if sent notice). Here, Plaintiffs have surpassed their burden. There are 13 combined Named and Opt-In Plaintiffs, evidencing more interest than previously deemed necessary.

## IV.  NOTICE: SCOPE, FORM AND DISTRIBUTION

### A. Temporal Scope: Notice Should Issue to All AMs in the Material Period

The notice period in FLSA collective action cases alleging willful violations should be three years—in this case, from July 20, 2018 through the present. See *Leo*, 2017 U.S. Dist. LEXIS 16004, at *8; *Isaacs*, 2015 U.S. Dist. LEXIS 6211, at *7;

*Desimoni*, 2016 U.S. Dist. LEXIS 88091, at *25; *Harris*, 2015 U.S. Dist. LEXIS 33579, at *9. "This Court has authorized a three-year period at this stage because any issue of willfulness is better addressed on a motion for decertification." *Torres*, 2016 U.S. Dist. LEXIS 16004, at *8-9.

The FLSA allows Plaintiffs to collect damages within a three-year statute of limitations if they can show, as alleged in the Complaint [D.E. 1 at ¶¶ 32, 44, 54, 55], that Defendant's violation of the FLSA was "willful" – meaning the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also, Stuven,* 2013 U.S. Dist. LEXIS 22240, at *15-16; *Fiore,* 2011 U.S. Dist. LEXIS 24371; *Ballew v. Lennar Corp.*, 2008 U.S. Dist. LEXIS 11094 (M.D. Fla. Feb. 14, 2008). Plaintiffs' allegations of willfulness, along with the fact that the overwhelming majority of courts use the three-year statute of limitations, *see supra*, require that the notice period be three years. *Abdul-Rasheed*, 2013 U.S. Dist. LEXIS 159623, at *9.[26]

### B. Geographic Scope: Notice Should Be Sent to All AMs Nationwide

The Eleventh Circuit has recognized conditional certification of nationwide collectives whose members span several states. *See Morgan*, 551 F.3d at 1241 (upholding nationwide collective of chain restaurant managers). The evidence here supports nationwide notice. *Palma*, 2013 U.S. Dist. LEXIS 175934, at *8 (declarations

---

[26] The look-back period should extend to the filing of the Complaint. *Smitherman v. Iguana Grill, Inc.*, 2015 U.S. Dist. LEXIS 87807, *4-5, n. 4 (N.D. Ala. June 12, 2015); *Beckworth v. Senior Home Care, Inc.*, 2014 U.S. Dist. LEXIS 117264, *4 (N.D. Fla. Apr. 11, 2014). This method for determining the temporal scope of the collective is most consistent with the broad remedial purposes of the FLSA.

from defendant's locations in 3 states sufficient for nationwide notice); *Devries*, 2014 U.S. Dist. LEXIS 15862, at *20-22 (nationwide certification based upon testimony from plaintiffs who worked in 4 different states). Plaintiffs worked at over 30 different locations in 12 states. Despite working in such dispersed locations, the declarations demonstrate that AMs had substantially similar duties, regularly worked overtime hours, were compensated the same, and were misclassified as exempt from overtime. Plaintiffs need not work at every Defendant location to have knowledge that AMs are similarly situated, especially where there is no dispute that Defendants treated them the same in terms of their classification. *Thomas*, 360 F. Supp. 3d at 1313; *Stuven,* 2013 U.S. Dist. LEXIS 22240, at *13. Accordingly, notice should be issued nationwide to all AMs who worked at any Defendants location.

### C. Information to Facilitate Notice

Defendants should be required to produce, in an electronic or computer-readable format, the full name, address(es), telephone number(s), and email address(es) (including personal email addresses to the extent they are available), and dates of employment for each member of the FLSA Collective. Courts in this District and throughout this Circuit routinely order such production. *Thomas*, 360 F. Supp. 3d at 1328 (ordering the full name, address(es), telephone numbers, email address(es), and dates and locations of employment for each of the collective members be produced in an electronic or computer-readable format); *Torres*, 2016 U.S. Dist. LEXIS 16004, at *10 (ordering production of "the full name, last known mailing address, any last known email address, and dates of employment"); *White,* 2008 U.S. Dist. LEXIS

96252, at \*7 (ordering production of a "computer readable data file containing the names, last known addresses and Social Security Numbers"); *Goers*, 2016 U.S. Dist. LEXIS 114092, at \*11 (requiring full names, job titles, last known addresses, personal email addresses, telephone numbers, dates of birth, and dates of employment); *Brown v. Discrete Wireless Inc.*, No. 14 Civ. 1922, 2014 U.S. Dist. LEXIS 161939, at \*6 (M.D. Fla. Nov. 19, 2014) (same).

### D. Form of Notice

Plaintiffs' proposed Notice is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172. As such, the proposed Notice achieves the ultimate goal of providing employees accurate and timely notice concerning the pendency of the collective action and should be adopted. Plaintiffs propose that their proposed Form of Notice and Consent, Exhibits O and P, respectively, should be used, as they meet these requirements.  *See Id*. The substance of Plaintiff's notice has been approved numerous times by Courts throughout the Eleventh Circuit. *See, e.g., Maar*, No. 16 Civ. 14121, D.E. 49; *Devries*, 2014 U.S. Dist. LEXIS 15862; *Fiore*, 2011 U.S. Dist. LEXIS 24371. Plaintiffs' proposed 60-day notice period for opt-ins to join is standard in this district, which the Court should approve, as it previously has ordered 60, and as many as 90, days. *Torres*, 2016 U.S. Dist. LEXIS 139745, at \*8) (court ordered 60-day notice period); *Pittman v. Comfort Sys. USA (Southeast), Inc.*, 2013 U.S. Dist. LEXIS 19434, at \*2 (M.D. Fla. Feb.13, 2013) (court ordered 90-day notice period); *see also Rosales v. El Michoacana LLC,* 2016 U.S. Dist. LEXIS 166572, at \*3 (M.D. Fla. Dec. 2, 2016).

**E.  Dissemination of Notice by Mail, Email, Text, Website and Reminders**

In addition to U.S. Mail, notice in this case should be authorized by email (for those members of the FLSA Collective for whom an email address is available). *Compagnone v. Dl Pool Serv.*, LLC, 2016 U.S. Dist. LEXIS 154033, at *18 (M.D. Fla. Nov. 7, 2012); *Libreros v. Texas de Brazil (Tampa)*, 2013 U.S. Dist. LEXIS 48327, *2-3 (M.D. Fla. April 2, 2013); *Abdul-Rasheed*, 2013 U.S. Dist. LEXIS 159632, at *10. Email and fax should be an option for FLSA Collective members to return their Consents. *Abdul-Rasheed*, 2013 U.S. Dist. LEXIS 159632, at *10. In fact, e-mail notice is the new norm of communication, serves to further the broad remedial purpose of the FLSA, and has widely been adopted by courts throughout the country. *See Alequin v. Darden Rests., Inc.,* No. 12–61742–CIV, 2013 WL 3945919 (S.D. Fla. July 31, 2013) (noting that the Southern District of Florida commonly approves e-mail notice to potential opt-in class members in FLSA cases); *Williams v. Coventry Health Care of Florida, Inc.*, 2016 WL 7013530 at * 1 (M.D. Fla. Oct. 4, 2016); *Collado v. J. & G. Transp., Inc.,* 2014 WL 5390569 at * 6 (S.D. Fla. Oct. 23, 2014).

In addition to email, many courts have previously authorized notice via text message in FLSA cases, given the statute's remedial purpose and the goal of transmitting the notice to as many members of the FLSA Collective as possible. Moreover, as another court recently held, "[t]here is no sound reason not to do so here." *Butler v. DirectSAT USA, LLC*, 2012 WL 1203980, at *2 (D. Md. Apr. 10, 2012); *see also Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012)

("[T]he Court finds fair and proper notice to current and former servers will be accomplished by regular mail, electronic mail, and postings in Defendants' break rooms.") (citing *O'Donnell v. Sw. Bell Yellow Pages, Inc.*, 2012 WL 1802336, at *4 (E.D. Mo. May 17, 2012; *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017) ("The Court finds persuasive the [p]laintiffs' argument that communication via email and text message will 'increase the chance of the class members receiving and reading the notice. . .'"). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130.

Plaintiffs' counsel should also be permitted to "maintain an internet website for the purpose of informing similarly situated persons of their right to join this litigation," and for FLSA Collective members to return their consents online. *Brown*, 2014 U.S. Dist. LEXIS 161939, at *9.

The Court should also authorize reminder notices to be sent half-way into the notice period to potential members who as of yet have not yet returned a consent form. *Brown*, 2014 U.S. Dist. LEXIS 161939, at *8; *see also Martinez v. DHL Express (USA) Inc.*, 2016 U.S. Dist. LEXIS 14304, *27-28 (S.D. Fla. Feb. 5, 2016) *27-28; *Burrell v. Toppers Int'l, Inc.*, 2016 U.S. Dist. LEXIS 31268, at *5 (M.D. Ga. March 11, 2016).

## V.  CONCLUSION

Plaintiffs respectfully pray that the Court enter an Order (a) conditionally certifying the nationwide FLSA Collective of salaried AMs; (b) requiring Defendants

to produce in an electronic or computer-readable format the full name, address(es), work and personal telephone number(s), and email address(es) (including personal email addresses to the extent they are available) for each member of the FLSA Collective; (c) authorizing notice (substantially in the form attached as Exhibit O), with a form of Consent to Join (substantially in the form attached as Exhibit P) to the members of the FLSA Collective, disseminated by U.S. Mail, email, text, and via website (returnable via mail, email, fax, or via website); (d) authorizing reminder notices halfway through the 60-day notice period; and (e) granting any further relief that this Court deems just and proper.

Dated: October 27, 2021

    /s/ Gregg I. Shavitz
Gregg I. Shavitz, Fla. Bar No. 11398
Email: gshavitz@shavitzlaw.com
Alan L. Quiles, Fla. Bar No. 62431
Email: aquiles@shavitzlaw.com
**SHAVITZ LAW GROUP, P.A**.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Telephone: (561) 447-8888
Facsimile: (561) 447-8831

Seth R. Lesser*
Christopher M. Timmel*
**KLAFTER & LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
Email: seth@klafterlesser.com
Email: christopher.timmel@klafterlesser.com

* Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Collective*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 27, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sends notification of such filing to all counsel of record.

/s/ Gregg I. Shavitz
Gregg I. Shavitz